[No. 27924-0-II.   Division Two.   September 30, 2003.]

MULTICARE HEALTH SYSTEM, *Appellant*, v. THE DEPARTMENT OF
HEALTH, ET AL., *Respondents*.

598

*Stephen I. Pentz* (of *Bennett, Bigelow & Leedom, P.S.*) and *Howard M. Goodfriend* (of *Edwards, Sieh, Smith & Goodfriend, P.S.*), for appellant.

*Michael B. King* and *Kathleen D. Benedict* (of *Lane Powell Spears Lubersky, L.L.P.*) for respondent Auburn Regoinal Medical Center, Inc.

*Donald W. Black* (of *Ogden Murphy Wallace, P.L.L.C.*); and *Wade J. Harman* for respondent Public Hospital District No. 1 of King County, d/b/a Valley Medical Center.

*Christine O. Gregoire, Attorney General*, and *Richard A. McCartan, Assistant*, for respondent Department of Health.

MORGAN, J. — The question in this appeal is whether the "construction, development, or other establishment of a new health care facility" requires a Certificate of Need from the Department of Health (Department) when the new facility is to be operated under an existing license.

MultiCare is a Washington not-for-profit corporation. It operates Tacoma General Hospital and Allenmore Hospital in Pierce County. It is currently licensed for a total of 521 beds.

MultiCare wants to construct a new facility in King County. It proposes to operate that facility under its existing license, moving 80 of its 521 beds from Tacoma to the new location.

In May 2000, MultiCare asked the Department to determine that MultiCare did not have to obtain a Certificate of Need before constructing its new facility.[1] The Department ruled to the contrary, holding that MultiCare had to obtain a Certificate of Need. An administrative law judge affirmed, MultiCare appealed to the superior court, and the superior court certified the case to this court.

---

[1] *See* WAC 246-310-050.

RCW 70.38.105 provides in part:

(1) The department is authorized and directed to implement the certificate of need program in this state pursuant to the provisions of this chapter.

(2) There shall be a state certificate of need program which is administered consistent with the requirements of federal law as necessary to the receipt of federal funds by the state.

(3) No person shall engage in any undertaking which is subject to certificate of need review under subsection (4) of this section without first having received from the department either a certificate of need or an exception granted in accordance with this chapter.

(4) The following shall be subject to certificate of need review under this chapter:

(a) The construction, development, or other establishment of a new health care facility; . . .

Under RCW 70.38.025(6), " '[h]ealth care facility' means hospices, hospice care centers, hospitals, psychiatric hospitals, nursing homes, kidney disease treatment centers, ambulatory surgical facilities, and home health agencies . . . ." Under RCW 70.38.025(15), " '[h]ospital' means any health care institution which is required to qualify for a license under [former] RCW 70.41.020(2) [(1991)]; or as a psychiatric hospital under chapter 71.12 RCW."

■ ■ Against this statutory backdrop, MultiCare asserts that it is not required to obtain a Certificate of Need. Citing and relying on WAC 246-320-085,[2] it argues that its "relocation of . . . beds from one facility to another does not

---

[2] WAC 246-320-085 provides:

The purpose of this section is to allow a single hospital license to cover more than one building.

The department may issue a single hospital license to include two or more buildings, provided:

(1) The applicant or hospital:

(a) Meets the licensure requirements of chapter 70.41 and this chapter; and

(b) Operates the multiple buildings as a single integrated system with:

(i) Governance by a single authority or body over all buildings or portions of buildings under the single license; and

(ii) A single medical staff for all hospital facilities under the single license;

require CON [certificate-of-need] review because the new facility will be operated . . . under [its] existing license."[3] It reasons that because its new facility will not have to qualify for a *new* license, the new facility is neither a "hospital" within the meaning of RCW 70.38.025(15) nor a "health care facility" within the meaning of RCW 70.38.025(6) and, thus, that a Certificate of Need is not mandated by RCW 70.38.105(4)(a).

In our opinion, MultiCare's argument is logically flawed. That a facility need not apply for a *new* license does not mean that it need not qualify for a license, and the applicable statutes require exactly that. RCW 70.41.110 provides that a license "shall be issued *only for the premises* and persons *named in the application*," and that a license shall not "be transferable or assignable except with the written approval of the department." (Emphasis added.) This statute requires that when an operator like MultiCare wants to bring new premises under an existing license, it must obtain a license—albeit an amended one—that includes the new premises.

Furthermore, RCW 70.41.110 provides that "no license . . . shall exceed thirty-six months in duration." Thus, even if MultiCare's new premises did not have to be licensed now—which they do—they would have to be licensed within three years; they would have to "qualify for a license" then if not now; and they are both a "hospital" and a "health care facility" within the meaning of RCW 70.38.025(15) and RCW 70.38.105(4)(a), respectively.

Nothing in the statutes or regulations contravenes these conclusions. RCW 70.41.120 states that "[a]ny licensee or applicant desiring to make alterations or additions to its facilities *or to construct new facilities* shall . . . comply with the regulations prescribed by the department." WAC 246--320-085 states only that the department "may issue" a

---

(2) The hospital arranges for safe, appropriate, and adequate transport of patients between buildings.

[3] Br. of Appellant at 25.

single license that encompasses two or more buildings. These provisions are entirely consistent with the requirement that an operator like MultiCare both amend and renew its license to include new premises.

We do not hold that an operator like MultiCare is required (or not required) to amend or renew its existing license before it can renovate or add to its *existing* premises. Because this case involves the establishment of new premises, not existing ones, we have not considered or addressed that question.

We reject MultiCare's arguments that the Department has engaged in improper rule making and made inconsistent decisions on other projects. For the reasons already discussed, it is our opinion that the Department is adhering to the applicable statutes, at least in this case.

The parties' remaining arguments lack merit or need not be reached. We deny MultiCare's claim for reasonable attorney fees.

Affirmed.

QUINN-BRINTNALL, A.C.J., concurs.

BRIDGEWATER, J. (dissenting) — I respectfully dissent. Multicare Health System owns and operates two Tacoma hospitals under one license and plans to construct an inpatient/outpatient facility in south King County. Multicare would transfer 80 beds from its Tacoma hospitals' bed capacity to the new, satellite facility and operate it under its existing hospital license, as part of a single integrated system. The Department of Health (Department) determined that Multicare's new facility would require Certificate of Need (CN) review. Multicare appeals from summary judgment in favor of the Department.

I would hold that the Department's statutes and regulations permit new buildings to be licensed under a hospital's existing license without CN review if the buildings are operated as a single integrated system with uniform gover-

nance and staffing, and with arrangements for the safe transport of patients between buildings.

Multicare, a Washington not-for-profit corporation, owns and operates two Tacoma hospitals, Tacoma General and Allenmore (TGAH). The Department issued TGAH a hospital license under chapter 70.41 RCW, permitting it to operate 521 total beds. In 1999, over 70,000 patients registered with, and more than 200,000 patients visited Multicare facilities in south King County. Also, Multicare employs approximately 75 physicians who provide primary care and specialty services in south King County facilities.

Multicare wants to construct an inpatient/outpatient facility (i.e., a hospital) in south King County and operate it under TGAH's hospital license. TGAH would transfer 80 existing beds from the Tacoma hospitals to the new facility, leaving TGAH's total licensed bed capacity unchanged. The new facility would be located in Auburn, 20 miles away from TGAH.

The issue before us is whether chapters 70.38 RCW and 246-320 WAC mandate a CN review when a hospital seeks to transfer existing beds to a new facility to be operated under the hospital's existing license. We are not deciding whether there is a "need" and the issue is not the same as if the CN statute had been accessed to determine "need." All parties acknowledge that multiple buildings can be operated under the same license; so the question becomes "is this one of those circumstances?"

## I. CN Review

Under a provision of the CN statute, RCW 70.38.105(4)(a), the *"construction,* development, or other establishment of a new health care facility" requires CN review. (Emphasis added.) RCW 70.38.025(6) defines "[h]ealth care facility" to include "hospitals."[4] RCW 70.38.025(15) defines "[h]ospital"

---

[4] RCW 70.38.025(6) provides in relevant part, " 'Health care facility' means hospices, hospice care centers, hospitals, psychiatric hospitals, nursing homes,

as "any health care institution which is required to *qualify* for a *license* under [former] RCW 70.41.020(2) [(1991)]."[5] (Emphasis added.) That statute provides in relevant part:

> "Hospital" means any institution, place, building, or agency which provides accommodations, facilities and services over a continuous period of twenty-four hours or more, for observation, diagnosis, or care, of two or more individuals not related to the operator who are suffering from illness, injury, deformity, or abnormality, or from any other condition for which obstetrical, medical, or surgical services would be appropriate for care or diagnosis.

Thus, under chapter 70.38 RCW, the construction of a hospital—any health care institution that must qualify for a hospital license under chapter 70.41 RCW—requires CN review. And under chapter 70.41 RCW, no person can establish a hospital, as defined by RCW 70.41.020, without a hospital license.[6] But, most importantly, a "hospital" is a "health care facility" for CN purposes only if it is required to qualify for a license under the hospital licensing statute, RCW 70.38.025(15).

Under WAC 246-320-085, the Department may issue a single hospital license to cover multiple buildings. The regulation provides:

> The purpose of this section is to allow a single hospital license to cover more than one building.

> The department may issue a single hospital license to include two or more buildings, provided:

> (1) The applicant or hospital:

---

kidney disease treatment centers, ambulatory surgical facilities, and home health agencies . . . ."

[5] *Recodified as* RCW 70.41.020(4) (2002) by LAWS OF 2002, ch. 116, § 2.

[6] RCW 70.41.090(1) provides in relevant part:

No person or governmental unit of the state of Washington, acting separately or jointly with any other person or governmental unit, shall *establish*, maintain, or conduct a hospital in this state, or use the word "hospital" to describe or identify an institution, without a license under this chapter . . . .

(Emphasis added.)

(a) Meets the licensure requirements of chapter 70.41 RCW and this chapter; and

(b) Operates the multiple buildings as a *single integrated system* with:

(i) Governance by a single authority or body over all buildings or portions of buildings under the single license; and

(ii) A single medical staff for all hospital facilities under the single license;

(2) The hospital arranges for safe, appropriate, and adequate transport of patients between buildings.[7]

Thus, under WAC 246-320-085, a single hospital license may cover multiple buildings (i.e., hospitals) if the applicant meets the licensure requirements, operates the buildings as a single integrated system, and arranges for sufficient transport of patients between buildings. Indeed, Multicare operates its two Tacoma hospitals and its Covington, King County campus under a single hospital license.

Multicare contends that the Department made an error of law in concluding that the transfer of beds to the proposed inpatient/outpatient facility is subject to CN review. It argues that CN review is not required because TGAH seeks to operate the new facility as part of a single integrated system under its existing hospital license. Multicare reasons as follows: (1) the construction of a hospital (a "health care facility")[8] requires CN review only if it must "qualify for a [hospital] license";[9] (2) a single hospital license can cover multiple hospitals;[10] (3) the proposed hospital does not need to qualify for a license because Multicare will operate it under TGAH's existing license in conformity with WAC 246-320-085; and (4) therefore, the proposed hospital is not subject to CN review.

---

[7] WAC 246-320-085 (emphasis added).

[8] RCW 70.38.105(4)(a).

[9] RCW 70.38.025(15).

[10] WAC 246-320-085.

Multicare's reasoning is sound. Even though WAC 246--320-085 requires that a hospital meet "the licensure requirements of chapter 70.41 RCW" before the hospital may be operated under an existing license, it does allow a single license to cover multiple hospitals.

This requirement of compliance with chapter 70.41 RCW was the linchpin for the presiding officer's decision. He reasoned that the proposed facility must first qualify for a license by itself before it could be added to TGAH's license. In other words, before a hospital may be operated under an existing license, it must independently qualify for a license. That is, whenever a hospital is established, it must qualify for a license, regardless of whether it will be operated under an existing license. Consequently, because all hospitals must qualify for a license, all hospitals must also undergo CN review.

The presiding officer's position was not sound. First, it would render useless the WAC that permits the operation of two buildings and even two hospitals under one license. Requiring a separate license and CN whenever there is new construction would be wasteful and useless. The operation of two or more buildings under one license is permitted under the WAC, which has not been challenged.

Second, any currently licensed hospital may "construct new facilities" under the hospital licensing statute and may amend its license to include the new facilities. RCW 70.41.120. Though a hospital must comply with licensing regulations any time it undertakes "new construction," including "[a]lterations to an existing hospital,"[11] that does not mean that a hospital license expires or that CN review takes place every time new facilities are constructed or there is renovation. It simply means that hospitals must comply with the Department's licensing regulations whenever they undertake any "new construction."[12] "New construction" is defined to include additions to existing hospi-

---

[11] WAC 246-320-500, -010(64).

[12] WAC 246-320-500.

tals, conversions of existing buildings to hospital use, and "any change, addition, remodel or modification . . . to an existing hospital or a portion of an existing hospital."[13] The Department reviews all construction documents for compliance with Department standards. In those circumstances, the WAC provides for use of such new construction only after approval of the construction documents and after the local government has given approval for occupancy.[14] Neither the Department nor the intervenors posit that any time there is new construction a CN process is required. For example, recently the Department refused to require CN review for the Auburn Regional Medical Center's plan to build a 107,000 square foot patient tower: its justification was that the expansion was at an existing facility. Similarly, there should be no additional requirement, if TGAH complies with WAC 246-320-085, for the addition of a satellite facility.

Third, to understand how WAC 246-320-085 operates, it is instructive to examine its predecessor, former WAC 246-318-017(4) (1999). Before March 10, 1999, separate hospital buildings could be operated under a single license only if the buildings were located within 10 miles of one another: "Hospital buildings included under one license shall not be located more than ten surface miles apart."[15] That 10-mile limitation was eliminated when the Department promulgated the current version, WAC 246-320-085. Plainly, the strict geographic limitation was eliminated and governance, staffing, and safe transport were deemed the most important criteria.

Accordingly, the presiding officer erred in granting summary judgment in favor of the Department. I would reverse and hold that Multicare need not obtain a Certificate of Need for its satellite facility.

---

[13] WAC 246-320-010(7)(a), (64).

[14] WAC 246-320-505(2).

[15] Former WAC 246-318-017(4) (1992).

## II. Attorney Fees

Finally, Multicare argues that it is entitled to its attorney fees and costs on appeal, should this court reverse.[16] I agree. I would not find that the agency's action was substantially justified. The very WAC provision that the Department adopted eliminated a geographic requirement; yet, the Department argued that there was some type of county-by-county restriction. Its position required the presiding officer to hold that it had erred because there is no statutory or regulatory provision imposing such a requirement. Similarly, the Department's position here is just as arbitrary, based as it is on the fact that the new facility would be a "free standing" hospital. Again, this restriction is not found in the statutes or WAC, and Multicare has assured the Department that it will be operated as a satellite, not as an independent facility.

I would reverse.

Review denied at 151 Wn.2d 1023 (2004).